In the Matter of the Appraisal of the Property of THOMAS C. SLOANE, Deceased, under the Transfer Tax Act.

THE COMPTROLLER OF THE CITY OF NEW YORK, Appellant; THE PRESIDENT AND FELLOWS OF YALE COLLEGE, Respondent.

1. TRANSFER TAX — METHOD OF PROCEDURE.   The method of procedure in a proceeding for the ascertainment and determination of a transfer or inheritance tax is controlled by the statute on the subject in force at the time of the institution of the proceeding, although the tax itself and the rights of the parties are controlled by an earlier statute.

2. APPLICATION OF ACTS OF 1887 AND 1892.   In a proceeding instituted in 1896, upon the determination of the particular estate, to ascertain the amount of the transfer tax upon a legacy in remainder under the will of a testator who died in 1890, the rights of the parties depend upon the statute as amended in 1887 (Ch. 713), but the method of procedure depends upon the statute of 1892 (Ch. 399).

3. VALUATION FOR BASIS OF TAX.   The test by which a transfer or inheritance tax is to be measured is the value of the estate at the time of the transfer of title and not its value at the time of the transfer of possession.

4. TIME OF TRANSFER OF TITLE.   The death of the testator is the time of the transfer of title to a legacy in remainder, when there is no uncertainty as to the person who will take in remainder, although there is uncertainty as to when the legacy will be paid over to the remainderman.

5. VALUATION OF LIFE ESTATE.   The value of a life estate subject to determination by an event happening prior to the death of the life tenant and dependent wholly upon the volition of the latter (such as remarriage) cannot be ascertained until the estate has terminated.

6. VALUE AT DATE OF TRANSFER.   The meaning and intention of the act of 1892 (Ch. 399, § 11) are that if an interest subject to the tax is of such a nature that its value cannot be ascertained immediately after its transfer, it is to be appraised at its fair and clear market value at the date of the transfer, whenever such value can be ascertained.

7. DETERMINATION OF PRIOR ESTATE BY REMARRIAGE — APPRAISAL OF REMAINDER.   In a proceeding under the act of 1892, instituted on the determination of the particular estate by remarriage, to appraise a legacy given in remainder after the death or remarriage of the testator's widow, the title to which was transferred on the death of the testator, the value of the estate of the widow during the period of her widowhood is to be deducted from the principal of the fund.

*Matter of Sloane,* 19 App. Div. 411, affirmed.

(Argued October 4, 1897; decided October 12, 1897.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 15, 1897, affirming an order made by the surrogate of the city and county of New York, reversing his formal order entered upon the report of an appraiser appointed under the Transfer Tax Act.

The facts, so far as material, are stated in the opinion.

*Emmet R. Olcott* for appellant. The appraiser properly made his appraisal of the value of the trust fund and the legacy to Yale College as of the date of the remarriage of the decedent's widow, April 16, 1896. (*In re Milward*, 27 N. Y. Supp. 288; *In re Stewart*, 131 N. Y. 274; *In re Hoffman*, 143 N. Y. 330; *In re Curtis*, 142 N. Y. 219; *In re Roosevelt*, 143 N. Y. 120.)

*Geo. C. Holt* for respondent. The transfer tax is not a tax on property, but on the right of succession. Yale College, therefore, is not taxable on the actual value of the property which it now receives, but upon the value of its right of succession at the time of the testator's death. (*In re Swift*, 137 N. Y. 77; *In re Seaman*, 147 N. Y. 69; *In re Davis*, 149 N. Y. 539; *In re Bronson*, 150 N. Y. 6; *In re Langdon*, 11 App. Div. 220; 153 N. Y. 6; *In re Sherman*, 153 N. Y. 1; *In re Roosevelt*, 143 N. Y. 120; *In re Cager*, 111 N. Y. 343; *In re Milward*, 27 N. Y. Supp. 288.)

VANN, J. This appeal presents the question as to the correct method of computing, for the purpose of a succession tax, the value of a bequest made to Yale College in the will of Thomas C. Sloane, a resident of this state, who died on the 17th of June, 1890. The third paragraph of said will is as follows: "Third. I give and bequeath to William D. Sloane and Andrew Wright, both of the city of New York, the sum of four hundred thousand dollars, in trust, to keep the same invested, and to apply the net income thereof to the use of my said wife, by paying the same over to her quarterly during

her life or until her remarriage, and upon her death or remarriage I give and bequeath out of said principal sum of four hundred thousand dollars the sum of two hundred thousand dollars to the president and fellows of Yale College in New Haven ; the sum of one hundred thousand dollars to my sister Euphemia Coffin, wife of Edmund Coffin, and the sum of one hundred thousand dollars to Mrs. Elizabeth W. Barnes, wife of Henry B. Barnes, and said trustees are to pay over and deliver the same accordingly."

Shortly after the death of the testator an application was made to assess the value of his estate for taxation under the Collateral Inheritance Act, which resulted in an order " that the tax on the remainder value of the principal sum of $400,000, of which $200,000 is bequeathed to the president and fellows of Yale College, $100,000 to Euphemia Coffin and $100,000 to Elizabeth W. Barnes, is not now determined." Priscilla Sloane, wife of the testator, who was 37 years of age at the time of his death, received the income from said legacy until the 16th of April, 1896, when she remarried, and the trust created by the third clause of the will was thereby determined. The proceeding now before us was instituted on the 18th of April, 1896, to cause a proper valuation of the estates, subject to taxation created by the clause in question, to be made and the lawful tax imposed. The appraiser reported his valuation of the property at the sum of $400,000, less $6,800 deducted for legal expenses and commissions, leaving the net value of the trust estate $393,200, and the value of the legacy to Yale College, one-half of that amount, or $196,600. The surrogate thereupon entered a formal order assessing the taxable interest of Yale College in the estate upon that basis, which, at the rate of five per cent on said amount, made the tax $9,830. The college appealed to the surrogate, who reversed the order and remitted the matter to the appraiser to make a new report, with instructions to compute the value of the estate in remainder by deducting from said sum of $196,600 the value of the particular estate of the widow for the term during which her widowhood actually

existed.   Upon appeal by the comptroller to the Appellate
Division that order was affirmed, and the case now comes here
upon a further appeal brought by the comptroller.

The original act taxing the right of succession to legacies
and inheritances in certain cases has been repeatedly amended
in relation to the method of procedure to ascertain the amount
of the taxes provided thereby.   As it stood, when first enacted
in 1885, it required the property passing under a bequest or
devise to " be appraised immediately after the death of the
decedent, at what was the fair market value thereof at the
time of the death of the decedent, * * * and after
deducting therefrom the value of " any " life estate, or term
of years, the tax prescribed by " the act on the remainder was
declared to " be immediately due and payable." (L. 1885, ch.
483, § 2.)   By section 13 provision was made for the appoint-
ment of an appraiser by the surrogate, whose duty it was to
appraise the property at its fair market value, and the surro-
gate was then required to " forthwith assess and fix the then
cash value of all estates, annuities and life estates, or term of
years growing out of said estate, and the tax to which the
same is liable."

In 1887, section two was amended so as to provide that,
" when any grant, gift, legacy or succession upon which a tax
is imposed by section first of this act, shall be an estate,
income or interest for a term of years or for life, or deter-
minable upon any future or contingent event, or shall be a
remainder, reversion, or other expectancy, real or personal, the
entire property or fund by which such estate, income or inter-
est is supported, or of which it is a part, shall be appraised
immediately after the death of the decedent, at what was the
fair and clear market value thereof at the time of the death
of the decedent." (L. 1887, ch. 713, § 2.)   Section 13 was
also amended at the same time so as to provide that " the
value of every future or contingent or limited estate, income
or interest shall, for the purposes of this act, be determined
by the rule, method and standards of mortality and of value
which are employed by the superintendent of the insurance

department in ascertaining the value of policies of life insurance and annuities, for the determination of the liabilities of life insurance companies."

In 1892 the act was still further amended so as to provide for an appraisal of contingent estates "immediately after such transfer, or as soon thereafter as may be practicable, at the fair and clear market value thereof at that time, provided, however, that when such estate, income or interest shall be of such a nature that its fair and clear market value cannot be ascertained at such time, it shall be appraised in like manner at the time when such value first became ascertainable." (L. 1892, ch. 399, § 11.)

It is claimed by the appellant that the assessment in question is to be made in accordance with the provisions of the Laws of 1885, as amended in 1887. We have held, however, that the method of procedure in a proceeding for the ascertainment and determination of a transfer or inheritance tax is controlled by the statute on the subject in force at the time of the institution of the proceeding, although the tax itself and the rights of the parties are controlled by an earlier statute. (*Matter of Davis*, 149 N. Y. 539.) In that case the intestate died January 16, 1887, but the proceeding to ascertain the amount of the tax was not commenced until July 24, 1894, and we held that while the rights of the parties depended upon the earlier, the procedure was controlled by the later statute. According to this precedent, therefore, the rights of the parties now before us depend upon the statute as amended in 1887, but the method of procedure depends upon the statute of 1892.

The transfer or inheritance tax, so far as residents of the state are concerned, is not a tax upon property, but upon the right of succession to property, and hence the true test by which the tax is to be measured is the value of the estate at the time of transfer of title and not its value at the time of the transfer of possession. (*Matter of Davis, supra.*) As the particular estate of Mrs. Sloane was a life estate, subject

to determination during life by her remarriage, it was impossible to ascertain upon the death of the testator the value of the interest ultimately going to Yale College. The want of certainty was not as to who would take the remainder, as in certain cases relied upon by the appellant, but as to when it would be paid over. (*Matter of Stewart*, 131 N. Y. 274; *Matter of Curtis*, 142 N. Y. 219; *Matter of Roosevelt*, 143 N. Y. 120; *Matter of Hoffman*, 143 N. Y. 330.) While the value of a simple life estate can be computed as soon as it is called into existence, the value of a life estate subject to determination by an event happening prior to the death of the life tenant and dependent wholly upon the volition of the latter, cannot be ascertained until the estate has terminated. It is clear that the legacy to the college which, if payable immediately, was worth its face, was not worth its face if payable in the future, yet there was no basis upon which an appraisal could be made until the determination of Mrs. Sloane's estate by her death or marriage. The case, therefore, was fairly covered by the statute as amended in 1892, providing for an appraisal "immediately after such transfer or as soon thereafter as may be practicable." Still, whenever the appraisal is made, the value of the property is to be appraised according to the fair and clear market value of the interest at the time of the death of the testator. The words "in like manner" and "such value," as used in said act, admit of no other construction. The command of the statute as it stood when this proceeding was instituted, was to make the appraisal immediately after the transfer at the fair and clear market value thereof at that time, but if the interest was of such a nature that its fair and clear market value could not then be ascertained it was to be appraised in like manner, that is, at its fair and clear market value at the date of the transfer, whenever such value could be ascertained. We think, therefore, that the learned surrogate proceeded upon the correct basis when he reversed his former decree, directed a new appraisal and instructed the appraiser to deduct from the principal fund

the value of the estate of the widow during the term of her widowhood.

After this proceeding was instituted, and on the 27th of May, 1896, the act in relation to taxable transfers of property was incorporated in the General Tax Law after various amendments had been made thereto, one of which provided that " Whenever an estate for life or for years can be divested by the act or omission of the legatee or devisee it shall be taxed as if there were no possibility of such limitation." (L. 1896, ch. 908, § 230.) As this act did not take effect until the 15th of June, 1896, it has no application to the proceeding now before us. (Id. § 281.) The trust estate had terminated before the new provision took effect. Moreover, as that provision only relates to the taxation of an estate for life or for years that can be divested by the act or omission of the legatee or devisee, it does not apply to an estate in remainder that cannot be so divested. The estate for life or for years alone is referred to when the statute says, " It shall be taxed as if there were no possibility of such a limitation."

We think the order of the learned Appellate Division affirming that of the surrogate was correct, and that it should be affirmed, with costs.

All concur.

Order affirmed. _____