mand of Newman he had found them secure. At the time of the accident he was ascending in the presence of the superintendent and following Kijanka, who had made the steps, and who, we may assume, was competent for that purpose. The projection of one and one-half feet made a narrow space for a stocky. man, as the plaintiff was; and the rise of one and one-half feet for each step called for caution in observing and measuring his course upward. He looked ahead of him, not realizing that the top step was a veritable danger trap. To be sure, he did not look upon the pile over the tier of boards next to him. He had received no warning that the top step was unsafe to step on. He was cautiously pursuing the course which he deemed proper in order to prevent him from falling 20 or 25 feet to the ground because of the perils which were obvious and they absorbed his attention. Negligence cannot, therefore, be imputed to him as matter of law merely because he did not look over the top of the pile when he had no reason to apprehend that the steps were not securely fastened. Had he looked on the pile he might not have been apprised of the fact that the boards comprising the top step were not held in place for he did not know how these steps were constructed or held in place. His conduct in the light of the circumstances disclosed, and also the question of assumption of risk, were for the jury to determine. Clark v. N. Y. C. & H. R. R. Co., 191 N. Y. 416, 420, 84 N. E. 397; Knezevich v. Bush Terminal Co., 127 App. Div. 54, 111 N. Y. Supp. 255.

I think the case should have been submitted to the jury.

---

### In re WHITE'S ESTATE.

(Supreme Court, Appellate Division, Fourth Department. March 6, 1912.)

TAXATION (§ 896*)—TRANSFER TAX—LIFE ESTATE—VALUE—DETERMINATION.

Tax Law (Consol. Laws 1909, c. 60) § 222, provides that transfer taxes shall be due and payable at the date of the transfer, except as otherwise provided. Section 230 requires the surrogate to direct an official appraiser to fix the fair market value of estates subject to tax, and that the value of every future or limited estate, dependent on any life or lives in being, shall be determined by the standard of mortality employed by the Superintendent of Insurance. Held that, while the appraiser is bound to ascertain the value of the estate or interest subject to tax as of the date of the transfer, the tax, so far as possible, must be based on the actual ascertained value of the right of succession to the property; and hence, where a beneficiary of a trust fund for life died after the testator, but before the appraisement of the tax, it was the appraiser's duty to appraise the value of the estate according to the actual duration of his life, and not according to his expectancy as shown by the mortality standard.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1714; Dec. Dig. § 896.*]

Appeal from Surrogate's Court, Erie County.

In the matter of the estate of Elizabeth B. White, deceased. From an order and decree of the surrogate of Erie county, affirming an

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

original determination on a report of the transfer tax appraiser in proceedings to determine the tax on the life estate of Gilbert B. Morgan, who died after testator and before proceedings to determine the tax, Carl T. Chester, executor, appeals.   Reversed.

Argued before McLENNAN, P. J., and SPRING, KRUSE, ROBSON, and FOOTE, JJ.

Carl H. Smith, for appellant.

Edward N. Mills, for respondent State Comptroller.

FOOTE, J.   In the order appealed from the learned surrogate has held that the transfer tax upon the life estate in a fund of $200,000, bequeathed by the will of Elizabeth B. White to a trustee, in trust to invest and pay the income to Gilbert B. Morgan, grandson of the testator, during his life, is taxable on a valuation of the legacy based upon the probable duration of the life of the grandson at the time of the testator's death, ascertained by the Superintendent of Insurance according to the standards in use in his office, notwithstanding the fact that the grandson, Morgan, died about eight months after the testator, and before the proceedings had been taken to appraise the estate or fix the amount of the tax.

The testator, Elizabeth B. White, died on March 2, 1908.   By her will a trust fund of $200,000 was vested in a trustee, in trust to invest and keep invested and apply the income, among other things, "to the support and maintenance of my grandson, Gilbert Bulkeley Morgan, during his natural life, in such manner as my said trustee in his discretion may deem for the best interest of my said grandson."   On the death of the grandson without issue, the principal of this fund was bequeathed to the Board of Home Missions of the Presbyterian Church of the United States of America.   A contest arose over the probate of the will, which continued until the 18th of April, 1910, when the will was admitted to probate.   Transfer tax proceedings upon the estate were instituted on June 4, 1910, and were concluded and the report of the appraiser made on October 17, 1910. Gilbert B. Morgan, the grandson and beneficiary of this trust fund for life, died on November 8, 1908, unmarried and without issue. Notwithstanding his death, the transfer tax appraiser called upon the State Superintendent of Insurance to determine the value of Gilbert B. Morgan's life estate in this fund, and such value was fixed by the Superintendent of Insurance as $138,809 as of March 2, 1908, the date of the testator's death.   This value was based upon the probable duration of the life of Gilbert B. Morgan at that time, according to the experience tables of mortality in use in the insurance department.   On this valuation, the surrogate assessed the tax upon Gilbert B. Morgan's interest in this fund at $1,388.09.   This decision was subsequently reviewed by the surrogate on the executor's appeal, and the decision affirmed, whereupon the executor appealed to this court.

The view of the learned surrogate, as disclosed by his opinion, is that the case is controlled by section 230 of the Tax Law (Consol. Laws 1909, c. 60), which provides the method of ascertaining the value of annuities or other future interests in estates dependent upon

a life or lives in all respects as if the life tenant had been living at the time the appraisal was made. We think this view is erroneous. Section 222 of the Tax Law provides that:

"All taxes imposed by this article shall be due and payable at the time of the transfer, except as herein otherwise provided."

By section 230 the surrogate is required to by order direct one of the official appraisers "to fix the fair market value of property of persons whose estates shall be subject to the payment of any tax imposed by this article." By the same section, the appraiser, after giving notice of the time and place when he will appraise the property, "shall at such time and place appraise the same at its fair market value as herein prescribed; and for that purpose the said appraiser is authorized to issue subpœnas and to compel the attendance of witnesses before him and to take the evidence of such witnesses under oath concerning such property and the value thereof." As to annuities, etc., the same section provides:

"The value of every future or limited estate, income, interest or annuity *dependent upon any life or lives in being*, shall be determined by the rule, method and standard of mortality and value employed by the Superintendent of Insurance in ascertaining the value of policies of life insurance and annuities for the determination of liabilities of life insurance companies, except that the rate of interest for making such computation shall be five per centum per annum."

Under these statutes, it is the duty of the appraiser to ascertain the value of the estate or interest subject to tax as of the date of the transfer, which in this case is the date of the death of the testator; but as to the property of the estate in general he is to take evidence from which that value may be ascertained. It is the manifest intent of these statutes that the tax, so far as possible, shall be based upon the actual ascertained value, not of the property itself, but of the right of succession to the property. Matter of Sloane, 154 N. Y. 109, 47 N. E. 978. But where the right of succession is for life only, the duration of that life being uncertain, the exact value cannot be ascertained. Hence the provision for estimating the value based upon the experience tables of the Superintendent of Insurance. This provision of the statute, however, is contained in the directions to the appraiser as to his method of procedure, and refers to the condition of affairs at that time, which may not be the same as existed at the death of the testator. Hence we think that when the statute says to the appraiser, "The value of every future or limited estate, income, interest or annuity dependent upon any life or lives in being, shall be determined by the rule, method and standard of mortality and value employed by the Superintendent of Insurance," etc., it refers to a case where the future estate is then, at the time of the appraisal, dependent upon a life or lives then in being, and that it has no application to a case like the present, where the life upon which the future estate was limited was not in being at that time. At the time the appraisal was made here, the value of the life estate of Gilbert B. Morgan could be determined with certainty, and there was no occasion for resorting to the method of estimating its value according to experi-

ence tables of mortality. The purpose of the statute was to afford a method of valuing an estate or interest not capable at the time of ascertainment with exactness, because of the uncertainty attendant upon the duration of an existing life. To such a case the statute clearly applies; but where there is no such uncertainty, the reason for the statute rule does not exist, and hence the statute was not intended to apply in such a case.

We think the order and decree of the surrogate, appealed from, should be reversed, and the matter remitted to the Surrogate's Court, and that the tax in question should be assessed upon the value of the interest of Gilbert B. Morgan's life estate according to the actual duration of his life, with costs and disbursements to appellant. All concur.