## SALOMON ET AL. *v.* STATE TAX COMMISSION OF NEW YORK.

## SIMONSON ET AL. *v.* SAME.

Nos. 79 and 80. Argued November 28, 1928.—Decided February 18, 1929.

*Mr. Charles Angulo,* with whom *Mr. Edmund O. Austin* was on the brief, for plaintiffs in error in No. 79.

*Mr. Abraham L. Gutman,* with whom *Mr. Wm. V. Goldberg* was on the brief, for plaintiffs in error in No. 80.

*Mr. Seth T. Cole* for defendants in error.

Mr. JUSTICE BRANDEIS delivered the opinion of the Court.

These cases, which were argued together, present the question whether the provision in the New York Transfer Law for taxing the transfer of contingent remainders violates the due process clause or the equal protection clause of the Fourteenth Amendment. That statute imposes a graduated succcession tax. On the transfer of life estates and vested remainders the tax is measured by their respective values as of the testator's death and is payable then. The tax on the transfer of contingent remainders is not payable until the death of the life tenant; and it is measured by the value at the testator's death of the estate transferred, undiminished by the value of the intervening life estate. For the due payment of the deferred tax the

executor must furnish adequate security. The amount of the security is fixed by a temporary taxing order. Laws of 1925, c. 144, §§ 230 and 241.

It will be sufficient to state the facts and proceedings in the *Salomon* case. Meyer Hecht died in 1925 a resident of New York. He bequeathed his residuary estate in trust to his widow for life; and upon her death one equal share thereof to each child then living and to the then living issue *per stirpes* of each deceased child. The value of the residue as of the testator's death was appraised at $322,094.37. The then value of the widow's life estate therein, computed according to the standard mortality tables using five per cent interest, was appraised at $124,-957; the tax then payable was assessed thereon; and no objection is made thereto. If the future interests had been vested remainders, the tax thereon would have been payable then on an appraisal of $197,137.37; that is, on the difference between the then value of the residue and the then value of the life estate. The future interests were all contingent. The tax was not payable until the death of the life tenant. The temporary taxing order appraised their aggregate value at the widow's death as $322,094.37; that is, at the value of the residue undiminished by the value of the life estate. Security for the future payment of the tax was required to be given as the statute requires. An appeal from the appraisal was denied by the Surrogate of New York County. *Matter of Hecht*, 127 Misc. 211. His judgment was affirmed by the Appellate Division of the Supreme Court, 219 App. Div. 656. Its judgment was affirmed by the Court of Appeals, without opinion, 246 N. Y. 601, 602; and by the remittitur it became the judgment of the Surrogates' Court. That judgment is final within the meaning of § 237 (a) of the Judicial Code as amended by the Act of February 13, 1925, c. 229, 43 Stat. 936. Compare *Wheeler* v. *Sohmer*, 233 U. S. 434; *Watson* v. *State Comptroller*, 254 U. S. 122.

The constitutional claims were duly made below; and the case is properly here.

The need of a peculiar provision for taxing the transfer of contingent remainders arises from the fact that the New York law imposes a graduated tax. The rates differ according to the amount or value of the gift to the particular beneficiary and also according to his relationship to the decedent. The lowest rate payable by a lineal descendant is one per cent, the highest four per cent. The lowest rate payable by a stranger is five per cent, the highest eight per cent. As the remainders are contingent, it is impossible to know before the contingency happens in whom the remainders will vest; and it may. be impossible to determine until then the relationship of the beneficiaries to the testator and the portions of the estate which they will respectively receive. Thus the rate of taxation will remain uncertain. For this reason, the statute postpones until the contingency happens both the definitive assessment of the tax on the transfer of the contingent remainders and the payment thereof. In respect to vested remainders, there is no obstacle to requiring both assessment and payment of this graduated tax as of the testator's death. The amount of the tax can be determined then; because it is known who the vested remaindermen are, what the share of each is and what his relationship to the testator was. And the value of the remainders as of the testator's death is likewise known, being the difference between the then value of the property transferred and the computed value of the life estate.

The need of a special provision for the taxation in respect to contingent remainders and the reasonableness of the particular measure adopted in 1925 appear from the history of the legislation. Since the enactment of the Transfer Tax Law in 1885 (Ch. 483), the aim of the Legislature has been at all times to adopt a method of laying the tax which would be fair to both the life tenant

and the future interest and would protect the revenues of the State. From time to time, various methods for doing this were tried. Experience revealed their defects. Under the original law and the early amendments, the transfers to contingent remaindermen were not taxable upon the testator's death, *Matter of Cager,* 111 N. Y. 343. They were taxable at the time when they vested in possession, *Matter of Stewart,* 131 N. Y. 274. And the tax then payable was computed upon the value, as of the testator's death, of the property transferred, less the value of the intervening life estate, *Matter of Sloane,* 154 N. Y. 109. Under this method the revenue derived from the tax on the contingent remainder was less than it would have been had the remainder been a vested one. For the State lost the benefit of the money during the period intervening between the death of the testator and that of the life tenant. To overcome this loss to the State and the discrimination thereby in favor of the contingent remaindermen, the Legislature provided by Chapter 284 of the Acts of 1897 that the tax payable on the vesting of the contingent remainder should be measured by the full value of the property as of the testator's death, without deducting the value of the intervening life estate, *Matter of Seligmann,* 219 N. Y. 656. This statute, while on its face eliminating the discrimination in favor of contingent remaindermen, was found to result in serious loss of revenue to the State. Taxes escaped collection when they became due, because it proved to be impossible to ascertain currently when the contingencies happened and hence when a tax became payable. To remedy this defect, it was provided by Chapter 76 of the Laws of 1899, that the tax must be paid upon the testator's death; and that it should then be paid out of the corpus of the estate at the highest applicable rate, with a provision for paying to the remainderman the surplus with interest if it should prove that a lower rate was applicable, *Matter of Vander-*

*bilt,* 172 N. Y. 69. This provision, while fully safeguarding the State's revenues, favored the remainderman at the expense of the life tenant. *Matter of Brez,* 172 N. Y. 609. For under this provision the life tenant lost the income on the full amount deducted to ensure payment of the tax on the contingent remainder; and the remainderman received from the State with interest such part thereof as proved not to be required for the ultimate payment of the tax. Thereupon some relief to the life tenant was afforded by Chapter 800 of the Laws of 1911. But it was not until the Act of 1925 here challenged provided for appraisal of the remainder as stated, that the Legislature succeeded in devising a means of laying the tax which operated justly as between life tenant and remaindermen and safeguarded the State's revenues.

*First.* The contention that the method of taxation prescribed violates the due process clause rests upon the assertion that in measuring the transfer tax in respect to a contingent remainder by the corpus of the trust fund undiminished by the value of the intervening life estate, something is taxed which does not exist. The argument is that taxation even of an inheritance must be measured by property taxable within the jurisdiction, *Frick* v. *Pennsylvania,* 268 U. S. 473; that New York levies the tax on the transfer of title from the testator, not on its value at the time of the transfer of possession, *Matter of Davis,* 149 N. Y. 539; that the tax must, therefore, be measured by what he transferred when he transferred it; that the aggregate value of the parts transferred by the testator cannot be greater than the value of the whole; but that here the State lays a tax upon both the value of the life interest and the undiminished value of the corpus.

The argument presented is unsound, because it ignores the fact that the tax in respect to the contingent remainders is not payable until after the death of the life tenant. The temporary taxing order, entered upon the

testator's death, is made solely to ensure that the tax so deferred will be paid when ultimately assessed. The requirement may be satisfied by depositing with the State either approved securities or cash. In either event the income collected from the security prior to the time when the tax becomes payable is accounted for to the executor; and after the tax has been paid, the securities or cash remaining on deposit will be accounted for to him. By applying the applicable rate to the full value of that which comes into enjoyment and not exacting payment of the tax until then, a just result is sought. For the definitive assessment of the contingent remainder and the payment of the tax thereon are postponed to the same date. The due process clause places no restriction on a State as to the time at which an inheritance tax shall be levied or the property valued for purposes of such tax. Compare *Cahen* v. *Brewster,* 203 U. S. 543.

*Second.* It is claimed that the tax violates the equal protection clause. One contention is that it unjustifiably discriminates between contingent and vested remainders in that the value of the life estate is first deducted in assessing the latter. It is true that an exact equivalency is not always achieved, because the tax is graduated according to the value of the remainder. But since the payment of the tax is postponed until the termination of the life estate the present value of the tax will tend to approximate what it would have been, if vested remainders had been given to the same persons and in the same shares that eventually go to the contingent remaindermen—assuming, of course, that the same rate of interest is used in making the calculation of both the present value of the tax and the present value of the future estate. It is true, also, that there is not an exact equivalency, since life tenants do not die at the precise termination of their life expectancies. But this uncertainty underlies the taxation of all future interests, vested

or contingent, wherever the tax is laid separately in respect to life estates and remainders. The uncertainty is unavoidable unless the State concludes to postpone laying the tax upon the remainders until they come into enjoyment, a course which it is not obliged to pursue. Moreover, there are differences between vested and contingent remainders which justify classification in imposing inheritance taxes. Compare *Stebbins* v. *Riley*, 268 U. S. 137, 141–143; *Billings* v. *Illinois*, 188 U. S. 97; *Board of Education* v. *Illinois*, 203 U. S. 553; *Beers* v. *Glynn*, 211 U. S. 477; *Keeney* v. *New York*, 222 U. S. 525.

*Third.* Several other reasons are urged why the statute should be held obnoxious to the equality clause. It is said that 'the tax being graduated according to amounts, there will result from the use of mortality tables discrimination between members of the same class. It is urged that since the tax is not collected until the termination of the life estate a more perfect equality would be achieved by assessing the tax on the value of the remainder, after deducting the value of the life estate, and allowing interest to the State for the actual known period during which the tax was withheld. The fact that a better taxing system might be conceived does not render the law invalid. As was said in *Metropolis Theatre Co.* v. *Chicago*, 228 U. S. 61, 69–70, " To be able to find fault with a law is not to demonstrate its invalidity . . . The problems of government are practical ones and may justify, if they do not require, rough accommodations— illogical, it may be, and unscientific." Further, it is said that postponing payment of the tax will prove burdensome, because it involves giving security to ensure the deferred payment; and that where the security is given by the deposit of cash, the income earned thereon will probably be less than would have been earned if the money had been otherwise employed. To all such objections it may be answered that minor inequalities and

492

hardships are incidents of every system of taxation and do not render the legislation obnoxious to the Federal Constitution.[1]  *General American Tank Car Corp.* v. *Day,* 270 U. S. 367.

Whether the State's power to tax the privilege of taking by will or descent property within its jurisdiction is in any way limited by the Fourteenth Amendment has not been argued.  As we are of opinion that none of the objections urged can be sustained, we have no occasion to consider that question.  Compare *Stebbins* v. *Riley,* 268 U. S. 137, 140.

*Affirmed.*

[1] See, also, *State Railroad Tax Cases,* 92 U. S. 575, 612; *Bell's Gap R. R. Co.* v. *Pennsylvania,* 134 U. S. 232; *Merchant's Bank* v. *Pennsylvania,* 167 U. S. 461, 464; *Magoun* v. *Illinois Trust & Savings Bank,* 170 U. S. 283; *Travellers' Insurance Co.* v. *Connecticut,* 185 U. S. 364; *Beers* v. *Glynn,* 211 U. S. 477, 485; *Citizens' Telephone Co.* v. *Fuller,* 229 U. S. 322, 331; *Northwestern Life Insurance Co.* v. *Wisconsin,* 247 U. S. 132, 137, 141; *Maxwell* v. *Bugbee,* 250 U. S. 525, 543; *Southern Ry. Co.* v. *Watts,* 260 U. S. 519, 526.