PROUTY et al. v. COYNE, Secretary of State of South Dakota, et al., and three other cases.

Nos. 358–361.

District Court, D. South Dakota, S. D.
Jan. 20, 1932.

J. H. Hays, of Sioux City, Iowa, and A. B. Fairbank, of Sioux Falls, S. D. (Hays, Baron & Mathews, of Sioux City, Iowa, and Boyce, Warren & Fairbank and Bielski & Elliott, all of Sioux Falls, S. D., on the brief), for complainants.

M. Q. Sharpe, Atty. Gen., and Benjamin D. Mintener and Herman L. Bode, Asst. Attys. Gen., for defendants.

Before GARDNER, Circuit Judge, and SANBORN and WYMAN, District Judges.

GARDNER, Circuit Judge.

The question presented by these suits which have been consolidated is the constitutionality of chapter 183, South Dakota Session Laws 1931, and chapter 224, South Dakota Session Laws 1925, as amended by chapter 179 of the South Dakota Session Laws of 1931.

Plaintiffs, who are operators of motor vehicles for hire, seek to enjoin the defendants, who are public officers of South Dakota charged with the duty of enforcing the motor vehicle laws, from attempting to enforce the above-mentioned statutes, claiming that their enforcement will violate rights guaranteed them under the Federal Constitution. Certain of the plaintiffs are common carriers engaged in interstate commerce, others are private carriers engaged in interstate commerce, still others are common carriers engaged in intrastate commerce, while still others are private carriers engaged in intrastate commerce. This classification may not be all-comprehensive, but will suffice for the purpose of this opinion.

Chapter 183, Session Laws 1931, comprises some twenty-two sections, and is too voluminous to set out in hæc verba herein. Section 6 provides for registration fee, and reads in part as follows: "The following license fee and compensation for the use of the highways shall be paid annually to the County Treasurer upon the application for registration or re-registration of a motor vehicle, except as hereinafter provided, upon the basis of the manufacturer's weight as follows."

Then follows a graduated schedule of license fees for cars; that schedule not being important in this case. The section further provides as follows: "For all motor trucks, including converted cars, road trac-

tors and truck tractors, upon the basis of their manufacturer's weight of chassis or actual chassis weight, whichever is the greater, as follows."

Then follows a classification of weights from 1,500 to 9,000 pounds, opposite which weights is set down the applicable license fee or compensation charge. These are graduated from $15 to $400. The section further provides that: "For all trailers and semi-trailers upon the basis of their actual weight, as follows." There is then set out a similar schedule of weights and charges.

It will be necessary later to call attention to certain other provisions of this section, which are made the object of attack by plaintiffs.

■ On behalf of those engaged in interstate commerce, it is urged that this statute is violative of the commerce clause of the United States Constitution, because a fixed flat charge is made against vehicles, graduated according to weight of the vehicle, but regardless of the mileage traveled or the tonnage carried. There is not much dispute as to the law, nor as to the facts, but the difficulty here arises in applying the law to the admitted facts. If applicable to interstate traffic, the tax imposed is without doubt a burden on interstate commerce, but that alone will not render it obnoxious to the commerce clause of the Constitution. The state may constitutionally impose a tax burden on interstate commerce as compensation for the use of the public highways, provided the charge is only a reasonable and fair contribution to the expense of construction and maintenance of such highways and of regulating the traffic thereon. Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222; Clark v. Poor, 274 U. S. 554, 47 S. Ct. 702, 71 L. Ed. 1199; Sprout v. South Bend, 277 U. S. 163, 48 S. Ct. 502, 504, 72 L. Ed. 833, 62 A. L. R. 45; Interstate Busses Corp. v. Blodgett, 276 U. S. 245, 48 S. Ct. 230, 72 L. Ed. 551; Interstate Transit, Inc., v. Lindsey, 283 U. S. 183, 51 S. Ct. 380, 382, 75 L. Ed. 953; Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385.

Conceding this principle of law, plaintiffs contend that the method of determining the amount of the charge is unscientific, arbitrary, and unreasonable, and that the standard by which the amount of the charge is determined does not produce a charge or tax bearing any reasonable relation to the privilege of using the highways, but that the ap-plication of the law results in discrimination and is arbitrary. The amount of the tax is based solely upon the chassis weight, regardless of the mileage traveled, or the load carried. Regulatory acts have been held valid as not being unreasonable, which base the amount of the license charge or tax according to the type, size, weight, capacity, horse power, or use of the particular vehicle, but in Interstate Transit, Inc., v. Lindsey, supra, it is pointed out that, where such a tax is a direct burden on interstate commerce, it must appear that it is levied only as compensation for the use of the highways, or to defray the expense of regulating motor traffic. Answering the suggestion that a tax graded according to carrying capacity was a reasonable measure for use of the highways, Justice Brandeis, who wrote the opinion, said:

"It is suggested that a tax on busses graduated according to carrying capacity is common and is a reasonable measure of compensation for use of the highways. It is true that such a measure is often applied in taxing motor vehicles engaged in intrastate commerce. Being free to levy occupation taxes, states may tax the privilege of doing an intrastate bus business without regard to whether the charge imposed represents merely a fair compensation for the use of their highways. Compare Gundling v. Chicago, 177 U. S. 183, 189, 20 S. Ct. 633, 44 L. Ed. 725. But since a state may demand of one carrying on an interstate bus business only fair compensation for what it gives, such imposition, although termed a tax, *cannot be tested by standards which generally determine the validity of taxes. Being valid only if compensatory, the charge must be necessarily predicated upon the use made, or to be made, of the highways of the state.* Clark v. Poor, supra. In the present act the amount of the tax is not dependent upon such use. *It does not rise with an increase in mileage traveled, or even with the number of passengers actually carried on the highways of the state. Nor is it related to the degree of wear and tear incident to the use of motor vehicles of different sizes and weights, except in so far as this is indirectly affected by carrying capacity. The tax is proportioned solely to the earning capacity of the vehicle. Accordingly, there is here no sufficient relation between the measure employed and the extent or manner of use to justify holding that the tax was a charge made merely as compensation for the use of the highways by interstate busses.*" (Italics ours.)

In the instant case, it appears from the face of the act that the avowed purpose of the tax was for compensation for the use of the highways. This being true, the burden of proof was upon the plaintiffs to show that the tax bears no reasonable relation to the privilege of using the highways, or is unreasonably discriminatory. To sustain the act as a burden on interstate commerce, three things must appear: First, that the tax was levied only for compensation for the use of the highways; second, that the tax as levied bears a reasonable relation to the privilege of using the highways; and, third, that it is not unreasonably discriminatory.

In the Lindsey Case, the tax, as in the case at bar, was substantial, and it was graded according to carrying capacity. In holding the statute unconstitutional, the court said: "In the present act the amount of the tax is not dependent upon such use. It does not rise with an increase in mileage traveled, or even with the number of passengers actually carried on the highways of the state."

So, in the instant case, the amount of the tax is in no way dependent upon the actual use which the vehicle might make of the highways, either as to miles traveled or tonnage carried.

The same thought is suggested in Sprout v. South Bend, supra, where the court said: "A flat tax, substantial in amount, and the same for busses plying the streets continuously in local service and for busses making, as do many interstate busses, only a single trip daily, could hardly have been designed as a measure of the cost or value of the use of the highways."

In the instant case, it appears that a number of the plaintiffs engaged in interstate commerce make only occasional and infrequent, though necessary, trips over the South Dakota highways, yet they are required under the statute to pay the same amount of tax, if such trips exceed four in number, as those who may be constantly using the highways. As to those engaged in interstate commerce, the act must be held to be unconstitutional. Interstate Transit, Inc., v. Lindsey, 283 U. S. 183, 51 S. Ct. 380, 75 L. Ed. 953; Sprout v. South Bend, 277 U. S. 163, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45.

As to intrastate commerce, a wider latitude of classification rests with the Legislature. The state may tax the privilege of doing an intrastate business, regardless of whether the charge imposed fairly represents compensation for the use of the highways. It has already been pointed out that a classification graded for purpose of license fee or excise tax, according to horse power of the motors, according to the value of the vehicle, according to the size, weight, capacity, or load or seating capacity, where the tax is not a burden on interstate commerce, will be sustained. Perfect and mathematical exactness is not to be expected in any system of taxation, and in Carley & Hamilton v. Snook, 281 U. S. 66, 50 S. Ct. 204, 206, 74 L. Ed. 704, 68 A. L. R. 194, it is made clear that a tax may be sustained under the equal protection of the law clause of the Fourteenth Amendment, which, if applied to interstate commerce, might be invalid under the commerce clause of the Constitution. Mr. Justice Stone in the opinion in that case said: "In such cases [those involving interstate commerce] this court must ascertain whether a forbidden burden is imposed on interstate commerce. For that purpose it may inquire whether the tax bears some reasonable relation to the use of the state facilities by the carrier."

The classification according to weight of chassis applied to vehicles engaged in intrastate commerce is not violative of the equal protection of the law clause of the Fourteenth Amendment, even though violative of the commerce clause of the Constitution.

It is also urged that the statute is violative of the equal protection of the law clause of the Fourteenth Amendment because of certain exemptions contained therein. Those most seriously assailed are as follows:

(1) A motor vehicle used exclusively in the construction or maintenance of highways is taxed as provided in the act, but not exceeding $150.

(2) Motor vehicles used by the owner exclusively in transporting materials and products to a mine or sawmill of the owner is given a preference tax of not to exceed $125.

(3) Motor hearses are exempted from the provisions of the act.

(4) Motor vehicles five years old or more are required to pay only one-half the normal tax.

(5) Motortrucks or trailers owned and used by a nonresident in marketing farm products produced by him to nearby points within this state are likewise exempted.

(6) The definition of trailer excludes a farm wagon not to exceed two tons' capacity, used as a trailer, provided it is used exclusively for the conveyance of agricultural prod-

ucts by or for the producers thereof, and also excludes a trailer drawn by a logging tractor or animals in logging operations.

█ Having in mind that we have eliminated all interstate carriers from the operation of the act, we shall consider these objections. Motor vehicles used exclusively in construction and maintenance of highways, and those used exclusively by the owner in transporting materials and products to mines or sawmills of the owner, are not exempted from the operation of the act, but the tax as to them is on a different basis and at a lesser rate. The purpose of the tax is to secure funds for the construction and maintenance of the highways. The Legislature may properly subdivide and classify for purposes of taxation. We cannot say that fixing a lower tax on vehicles used in constructing and maintaining highways, and those used in transporting material and products to a mine or sawmill, is arbitrary. One of the purposes of the law is to impose the greater part of the burden of maintaining the highways upon those who most use them, and a classification according to the nature of the uses to which they are put, or in proportion to the extent of their use of the highway, is reasonable. The mere fact that the amount of the tax imposed upon one class of vehicles is different from that imposed upon another class does not render the act void as discriminatory, where the classification is a reasonable one and where operators within each class are treated alike. This is true even though the classification may result in a disproportionate payment of taxes by isolated individuals in such classes. We certainly cannot say from an inspection of the law that the fixing of a lower tax upon the vehicles used in road construction and maintenance, and those used in transporting materials and products to mines or sawmills, is not based upon the extent of use or the destruction inflicted by these vehicles, and there is no evidence in the record to overcome the presumption that their use is such, either in extent or character, as to render this rate of tax warranted and reasonable.

█ This is likewise true as to vehicles five years old or more, which are required to pay only half the tax. While it may be true in isolated cases that a motor vehicle five years old may be used to the same extent as a new vehicle, we cannot say that the Legislature was not warranted in fixing this lesser tax upon such vehicles, because there must come a time when these vehicles become obsolete and wear out and

have not the carrying capacity, either in mileage or tonnage, as newer vehicles; and the question of the reasonableness of classification for licensing or taxing purposes is primarily one for the Legislature, and becomes a judicial question only when the legislative action is clearly unreasonable. Interstate Busses Corp. v. Holyoke Street Ry. Co., 273 U. S. 45, 47 S. Ct. 298, 71 L. Ed. 530; Dane v. Jackson, 256 U. S. 589, 41 S. Ct. 566, 65 L. Ed. 1107; Salomon v. State Tax Commission, 278 U. S. 484, 49 S. Ct. 192, 195, 73 L. Ed. 464; Metropolis Theater Co. v. Chicago, 228 U. S. 61, 33 S. Ct. 441, 443, 57 L. Ed. 730.

In Salomon v. State Tax Commission, supra, the court said: "The fact that a better taxing system might be conceived does not render the law invalid."

And in Metropolis Theater Co. v. Chicago, supra, it is said: "To be able to find fault with a law is not to demonstrate its invalidity. * * * The problems of government are practical ones and may justify, if they do not require, rough accommodations, —illogical, it may be, and unscientific."

█ The attack on the exemption excluding from the definition of trailers a farm wagon not to exceed two tons' capacity used as a trailer, and used to convey agricultural products by or for the producer thereof, and a trailer drawn by a logging tractor or animals in logging operations, is based largely on the authority of Smith v. Cahoon, 283 U. S. 553, 51 S. Ct. 582, 587, 75 L. Ed. 1264. The act there under consideration was one providing that the term "auto transportation company," upon which the obligations of the act were imposed, should not include "any transportation company engaged exclusively in the transporting agricultural, horticultural, dairy or other farm products and fresh and Salt Fish and Oysters and Shrimp from the point of production to the assembling or shipping point enroute to primary market, or to motor vehicles used exclusively in transporting or delivering dairy products." The act provided for the furnishing of a bond or insurance policy in order to afford security for the public against injuries, as well as for the protection of persons and property transported. This was a police measure relating to the public safety. Chief Justice Hughes, in condemning the act as arbitrary, said: "But, in establishing such a regulation, there does not appear to be the slightest justification for making a distinction between those who carry for hire farm products, or milk or butter, or

fish or oysters, and those who carry for hire bread or sugar, or tea or coffee, or groceries in general, or other useful commodities. So far as the statute was designed to safeguard the public with respect to the use of the highways, we think that the discrimination it makes between the private carriers which are relieved of the necessity of obtaining certificates and giving security, and a carrier such as the appellant, was wholly arbitrary, and constituted a violation of the appellant's constitutional right."

▆▆▆ Viewed as a police measure, the exemption was clearly arbitrary. The public safety was as much endangered by the operation of a vehicle carrying farm products as by the operation of a vehicle carrying groceries. But the act involved in this case is not a police measure, but is an excise tax measure, and the equal protection of the law clause of the Federal Constitution does not require the adoption of an ironclad rule of equal taxation, nor prevent the exercise of a discretion in the selection of subjects, or the classification of properties for taxation purposes. State Board of Tax Commissioners v. Jackson, 283 U. S. 527, 51 S. Ct. 540, 75 L. Ed. 1248, 73 A. L. R. 1464; American Sugar Refining Co. v. Louisiana, 179 U. S. 89, 21 S. Ct. 43, 45, 45 L. Ed. 102; Rast v. Van Deman & Lewis Co., 240 U. S. 342, 36 S. Ct. 370, 60 L. Ed. 679, L. R. A. 1917A, 421, Ann. Cas. 1917B, 455; Quong Wing v. Kirkendall, 223 U. S. 59, 32 S. Ct. 192, 56 L. Ed. 350; Brown-Forman Co. v. Kentucky, 217 U. S. 563, 30 S. Ct. 578, 54 L. Ed. 883; Clark v. Kansas City, 176 U. S. 114, 20 S. Ct. 284, 285, 44 L. Ed. 392; Hart Refineries v. Harmon, 278 U. S. 499, 49 S. Ct. 188, 73 L. Ed. 475; Roberts & Schaefer Co. v. Emmerson, 271 U. S. 50, 46 S. Ct. 375, 70 L. Ed. 827, 45 A. L. R. 1495; Stebbins & Hurley v. Riley, 268 U. S. 137, 45 S. Ct. 424, 69 L. Ed. 884, 44 A. L. R. 1454; Keeney v. Comptroller of State of New York, 222 U. S. 525, 32 S. Ct. 105, 56 L. Ed. 299, 38 L. R. A. (N. S.) 1139; Singer Sewing Machine Co. v. Brickell, 233 U. S. 304, 34 S. Ct. 493, 58 L. Ed. 974; Ohio River & W. R. Co. v. Dittey, 232 U. S. 576, 34 S. Ct. 372, 58 L. Ed. 737; Baker v. Druesedow, 263 U. S. 137, 44 S. Ct. 40, 68 L. Ed. 212; Bekins Van Lines, Inc., v. Riley, 280 U. S. 80, 50 S. Ct. 64, 74 L. Ed. 178; Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160; Watson v. State Comptroller, 254 U. S. 122, 41 S. Ct. 43, 65 L. Ed. 170; Heisler v. Thomas Colliery Co.,

260 U. S. 245, 43 S. Ct. 83, 67 L. Ed. 237; Lake Superior Consolidated Iron Mines v. Lord, 271 U. S. 577, 46 S. Ct. 627, 70 L. Ed. 1093; Cargill Co. v. Minnesota, 180 U. S. 452, 21 S. Ct. 423, 45 L. Ed. 619; Carley & Hamilton v. Snook, 281 U. S. 66, 50 S. Ct. 204, 74 L. Ed. 704, 68 A. L. R. 194; State v. Kozer, 116 Or. 581, 242 P. 621, 624; Dohs v. Holm, 152 Minn. 529, 189 N. W. 418; Utah Power & Light Co. v. Pfost (D. C.) 52 F.(2d) 226; Louis v. Boynton (D. C., Kan., Three-Judge case) 53 F.(2d) 471; 6 R. C. L. 373, 384, 385.

▆▆▆ The power to regulate and to tax being conceded, the details of the legislation and the exceptions which shall be made rest primarily with the Legislature. It is a well-established rule that, whenever the classification is called in question, if a state of facts reasonably can be conceived that would sustain it, the existence of that state of facts must be assumed. In American Sugar Refining Co. v. Louisiana, supra, the court said: "But from time out of mind it has been the policy of this government, not only to classify for purposes of taxation, but to exempt producers from the taxation of the methods employed by them to put their products upon the market."

In Clark v. Kansas City, supra, there was involved a statute providing for the annexation of lands to a municipality. The act contained the following exemption: "But nothing in this act shall be taken or held to apply to any tract or tracts of land used for agricultural purposes when the same is not owned by any railroad or other corporation."

The court, in sustaining the exemption, said: "We think the distinction is justified by the principle of the cases we have cited. That principle leaves to the state the adaptation of its laws to its conditions. The growth of cities is inevitable, and in providing for their expansion it may be the judgment of an agricultural state that they should find a limit in the lands actually used for agriculture."

In State Board of Tax Commissioners v. Jackson, supra, the court sustained a classification for taxation purposes. In that case the owner of a chain of 225 stores was obliged to pay $5,443 in taxes, while the owner of a single store, though it involved greater investment and income, was required to pay but $3. The court, however, held that the classification, even though it produced such inequitable results, was not violative of the equal protection of the law clause of the Constitution.

In State v. Kozer, supra, the Supreme Court of Oregon said: "In this state, motor vehicles used for agricultural purposes are subject to all of the general provisions of the motor vehicle laws, but are exempt from payment of the additional tax for the reason, no doubt, that the Legislature was of opinion that 'delivery to market of the products of husbandry by the grower and owner thereof' was merely incidental to farming, and that the highways of the state would not be subjected to such a use as would justify a greater license fee."

In the instant case, in the absence of evidence on the subject, we should presume, in support of the constitutionality of the statute, that these exempted vehicles do not use the highways to the same extent, and do not inflict damage on the highways to the same degree, as do the vehicles not within the exemptions. We should also be warranted in assuming, in the absence of evidence, that the traffic moved in vehicles so exempted is not substantial. This is true also with reference to the exemption covering hearses. The classification exempting them is clearly a reasonable one. We conclude that the statute does not violate the equal protection of the law clause of the Constitution of the United States.

The constitutionality of chapter 224, Session Laws 1925, as amended by chapter 179, Session Laws 1931, is challenged by Bekins Van and Storage Company, V. C. Van Der Hule, and Harry Ogram, all engaged solely in interstate commerce. The taxes there provided for are levied in addition to those imposed by chapter 183, Session Laws 1931, but, as we have held that the taxes imposed by chapter 183 cannot be exacted from those engaged in interstate commerce, that ground of attack is no longer available to these plaintiffs. Section 19 of this act provides for a license fee charge or tax of 3 per cent. on gross earnings. The section recites that: "In consideration of the use of the public highways of this state every motor carrier shall pay, in addition to the regular license fees or taxes imposed on motor vehicles in this state, the following compensation to be used for the maintenance and upkeep of the public highways."

It is conceded by counsel that a gross earnings tax may legally be exacted, if it is in lieu of all other taxes. United States Express Co. v. Minnesota, 223 U. S. 335, 32 S. Ct. 211, 56 L. Ed. 459. The fact that different statutes impose two taxes upon the same subject-matter is not in itself a valid objection to the act. Carley & Hamilton v. Snook, supra. But, as above noted, this question is no longer involved. The exaction here is graded according to gross earnings, which would seem to be a fair and reasonable method of determining the amount of the tax. Such a standard should reasonably reflect the use made of the highways, and we are of the view that this law is not violative of either the commerce clause or the equal protection of the law clause of the Constitution. Being engaged solely in interstate commerce, these plaintiffs cannot be affected by the exemptions contained in the act.

It is urged that, if either of the provisions of these acts is held to be unconstitutional, then the entire act must be held void as to all of the parties. First, it will be noted that the act itself contains provision that, if any section should be held void or unconstitutional, such section or part should be deemed to be independent and unrelated to any other section, and that only the specific provision which is held to offend should be affected, and that it should not be considered that the void section was an inducement to the passage of any other section or provision. The act contains further provision that it should apply to commerce among the states, only so far as the same may be permitted under the provisions of the Constitution of the United States. Board of Trade of City of Chicago v. Olsen, 262 U. S. 1, at page 42, 43 S. Ct. 470, 67 L. Ed. 839. We are not called upon to determine what effect should be given this declaration in the act, because the effect of our holding is that chapter 183 is valid in so far as it affects or lays a burden upon intrastate traffic, but that it is void in so far as it lays a burden upon or attempts to regulate interstate traffic. There is, therefore, no dividing up nor severing of the act. It is held valid in its entirety as to one class of traffic, and void in its entirety as to another class of traffic.

But, quite aside from these considerations, it is observed that chapter 183, Session Laws 1931, does not specifically mention interstate traffic. True, interstate traffic is not excluded, and the terms of the act are general, but, if as applied to interstate commerce the act would be unconstitutional, as we have held, then we must presume, in favor of its constitutionality, that the Legislature did not intend the act to extend to or place a burden on interstate commerce.

Other grounds of attack urged by counsel have either been eliminated by reason of

our decision, or have not been deemed of sufficient importance to merit discussion.

Counsel for defendants may prepare findings and conclusions in accordance herewith, submitting copy of same to counsel for plaintiffs, with form of proposed decree.