## GROLBERT v. BOARD OF RAILROAD COM'RS OF STATE OF IOWA et al.

### No. 4476.

District Court, S. D. Iowa. Central Division.
June 21, 1932.

Blair & Blair, of Jefferson City, Mo., for plaintiff.

J. H. Henderson, Commerce Counsel of Iowa, and Stephen Robinson, Asst. Commerce Counsel of Iowa, both of Des Moines, Iowa, for defendants.

Before KENYON, Circuit Judge, and DEWEY and NORDBYE, District Judges.

DEWEY, District Judge.

Complainant seeks to enjoin the defendants from enforcing chapters 252-A1 and 252-A2 of the Code of Iowa (sections 5105-a1 to 5105-a39 and 5105-a40 to 5105-a57), known as the Iowa Motor Carrier Law, on the ground that they are unconstitutional as against the business of complainant engaged in interstate traffic. Complainant has refused to pay the tax sought to be imposed by said chapters or to submit himself to the regulations thereof. The bill of complaint was filed and a temporary restraining order issued on or about April 11, 1932, and the matter came on for hearing in open court on the 1st day of June, 1932, before a three-judge court under the provisions of section 266 of the Judicial Code (28 USCA § 380).

By agreement of the parties the suit was tried upon its merits. The facts were principally stipulated, and in substance present that William C. Grolbert is an individual doing business as the Akron-Kansas City Motor Freight, Inc., but the said Akron-Kansas City Motor Freight company is not incorporated; that there is a diversity of citizenship and the action involves a sum in excess of $3,000; that William C. Grolbert, under the above designation, does operate certain motor vehicles through and in the state of Iowa over certain designated routes and through the state to Minneapolis and St. Paul, and that the routes mentioned are regularly used whenever complainant's trucks operate for the furnishing of the service which they render; that complainant is exclusively engaged in interstate commerce and since on or about February 1, 1932, has employed a solicitor whose duties have been the solicitation of freight from points outside of the state of Iowa to points within the state of Iowa over the routes described and from points on the various routes to points outside the state of Iowa. Also, that complainant advertised through various mediums of advertisement in the state of Iowa for such transportation of freight.

These advertisements are shown in certain exhibits, identified as Exhibits 1 to 5, inclusive, and show proferred motor freight service to the principal cities of eighteen states with offices in sixteen of the largest cities and show the rates between the largest cities and the difference between his rates and the railroad rates between such points. They also set forth the rates to be charged to the different points in Iowa from Omaha and other points. Exhibit 6 is an advertising letter sent by complainant to Mr. Ed. Thomas, traffic manager, Western Grocer Company, at Des Moines, Iowa, announcing a terminal at Des Moines that would enable direct service of complainant's lines to St. Louis, Chicago, Kansas City, Minneapolis, and Omaha. The letter states the rates to be the same as LCL rates in effect prior to December 3, 1931, and include a free pick-up and a store-door delivery; it also announces that the complainant carries complete insurance protection, including a $30,000 cargo insurance and liability in the amount of $50,000, and that complainant at the present time is serving many of the largest national shippers.

The facts further establish that complainant maintains within the city of Des Moines an office terminal and warehouse, that shipments going outside of the state of Iowa from Des Moines are loaded at the terminal warehouse in Des Moines, that various shipments transported from various points outside of the state of Iowa to Des Moines are unloaded at the terminal, and that some of the shipments are broken and made up at the Des Moines terminal. Exhibit 7 consists of 205 sheets of a record of the business of the complainant from February 22, 1932, to April 30, 1932, inclusive, showing freight transported through and from the Des Moines terminal. Complainant claims and asserts that he has the legal right to refuse to accept shipments tendered for transportation and he has at times refused to accept shipments tendered to him.

On May 19, 1932, by direction of the Board of Railroad Commissioners of the State of Iowa, an information was filed in the courts of Iowa charging the complainant with committing a misdemeanor in operating his trucks on the highways of Iowa without complying with the Iowa Motor Carrier Law, and the information filed is still pending.

It is also stipulated that the provisions of the Iowa Motor Carrier Law and the rules and regulations promulgated by the Board of Railroad Commissioners will require complainant to pay to the State of Iowa in the year 1932 not less than $3,100 a ton mile tax. It being also agreed that either party might supplement the stipulation of facts by affi-

davits, the defendant Board of Railroad Commissioners introduced in evidence an affidavit to the effect that, on application for a certificate as required by the act where the carrier is engaged exclusively in interstate commerce, the board construes the statute as not to require a showing that the proposed service will promote public convenience and necessity but grants the certificate as a matter of course, and also does not require the applicant to file insurance bonds to cover the insurance provided by the act. Complainant also introduced in evidence an affidavit setting out facts as to the cost of operating 88 trucks loaded in Des Moines and stating that on the basis of one-fourth cent per ton mileage based on the maximum capacity of each vehicle the tax would amount to $4\frac{1}{4}$ cents per mile and that the average earnings of each truck during a certain period on a trip through Iowa would be $2.67, while the total tax would be $6.61 per truck, making a net loss of $3.94 per truck for each trip in Iowa, and stating that if said tax is enforced it will destroy his business in the state of Iowa. When the affidavits were presented they were objected to by counsel as containing facts irrelevant and immaterial to the issues, but the incompetency of the evidence on account of it being presented by affidavits was not insisted upon and was permitted under the agreement in the stipulation of facts introduced in evidence.

Chapter 252-A1 of the Iowa Motor Carrier Law includes 39 sections designated as sections 5105-a1 to sections 5105-a39, inclusive, while chapter 252-A2 comprises 18 sections which are designated as sections 5105-a40 to sections 5105-a57, inclusive (Code 1931).

The provisions of the Iowa Motor Carrier Law are somewhat similar to the Kansas Motor Vehicle Act as set out in the opinion decided May 23, 1932, by the Supreme Court of the United States in the case of Continental Baking Co. et al., Appellants, v. Harry H. Woodring et al., Defendants, 52 S. Ct. 595, 598, 76 L. Ed. 1155, and also somewhat similar to the provisions of the Motor Carrier Law of Florida as set out in the case of Smith v. Cahoon, 283 U. S. 553, 51 S. Ct. 582, 75 L. Ed. 1264.

The defendants claim that this court is without jurisdiction to hear and determine the issues herein because the matters under investigation deal with the taxing power of the state and that the federal courts are without authority to enjoin the collection of this tax. This claim is based upon the decisions

of the United States Supreme Court that where a taxpayer asks relief in the equity courts of the United States he cannot prevail in cases where he has a plain, adequate, and complete remedy at law. Such a legal remedy, however, is applicable when the suit is brought to enjoin collection of a tax and there are no allegations setting up special circumstances which would render the legal remedy inadequate. Here special circumstances are pleaded that render a legal remedy inadequate; but it is not necessary for us to pass upon this question, as jurisdiction in cases involving the constitutionality of similar statutes has been entertained and the issues presented passed upon by the Supreme Court of the United States.

Complainant takes the position and claims that he is a private, or private contract, carrier and as such the provisions of the chapter in question constitute an unreasonable burden upon his interstate business. He relies upon the following decisions of the Supreme Court holding that a state cannot compel private carriers to become public carriers: Smith v. Cahoon, 283 U. S. 553, 51 S. Ct. 582, 75 L. Ed. 1264; Frost & Frost Trucking Co. v. R. R. Commission, 271 U. S. 583, 46 S. Ct. 605, 70 L. Ed. 1101, 47 A. L. R. 457; Michigan Commission v. Duke, 266 U. S. 570, 45 S. Ct. 191, 69 L. Ed. 445, 36 A. L. R. 1105.

All of these cases discuss the rights of private carriers, and the Supreme Court in the Frost Trucking Company Case, supra, page 599 of 271 U. S., 46 S. Ct. 605, 609, 70 L. Ed. 1101, 47 A. L. R. 457, in discussing the question whether a carrier could make an unlimited number of private contracts and still remain a private carrier, said: "It is enough to say that no such case is presented here, and we are not to be understood as challenging the power of the state, or of the Railroad Commission under the present statute, whenever it shall appear that a carrier, posing as a private carrier, is in substance and reality a common carrier, to so declare and regulate his or its operations accordingly."

And in Red Ball Transit Company v. Marshall et al. (D. C.) 8 F.(2d) 635, 638, 639, a three-judge court discussing a similar situation and referring to the Duke Case, supra, and Hissem v. Guran, 112 Ohio St. 59, 146 N. E. 808, said: "The conclusions arrived at by the Supreme Court of the United States and the Supreme Court of Ohio in these two last-mentioned cases depended upon the determination of the fact that the parties involved were private carriers, as distinguished from public or common carriers. The car-

riage was in specifically defined merchandise for definite parties, and none others. A very different set of facts appear in relation to the Red Ball Transit Company. It is in the business of motor transportation. It advertises itself to be in that business. It holds itself out to contract for the carrying of certain classes of merchandise. It offers an optional contract to its prospective patrons, and permits them to choose which of the contracts is desirable. There is no proof that it denies haulage to any one who offers to contract. True, it makes the bare statement that it may decline any contract that may be offered. This is not persuasive, however, in view of the surrounding facts and circumstances. Of course, it has no right of eminent domain, nor does it need such. It has no franchise, but it has applied for the franchise or rights under the motor transportation law; that is, its right to carry on its business over the highways of the state."

█ The facts in this case before us fairly disclose, and the court finds, that the complainant here is not engaged as a private carrier but is a public or common carrier of freight. Denver & R. G. W. Ry. Co. v. Linck (C. C. A.) 56 F.(2d) 957.

█ As complainant is not a private carrier, questions of whether or not the acts are unconstitutional as to a private carrier become immaterial, as it is incumbent upon one who seeks as adjudication that a state statute is repugnant to the Federal Constitution to show that he is within the class with respect to whom it is unconstitutional. Louisville & Nash. R. R. Co. v. Finn, 235 U. S. 601, 610, 35 S. Ct. 146, 59 L. Ed. 379.

This finding of fact that the complainant is not a private carrier eliminates many of his claims based upon the assumption that he is a private carrier.

Complainant in his oral and written argument places special emphasis on his claim that the tax is an undue and unreasonable burden on interstate commerce and is unscientific, arbitrary, and unreasonable, as not being based on any use of the highway but on the earning capacity of motor vehicles and does not constitute a sufficient relation between the measure employed and the extent or manner of the use of the highway to justify a holding that the tax is a charge made merely as a compensation for the use of the highways for interstate traffic.

The provisions of the act thus assailed are:

"5105-a41. * * * There shall be assessed against and collected from every motor carrier the following tax for the maintenance and repair of the highways:

"For motor vehicles having pneumatic tires, one-fourth cent per ton-mile of travel." (It was conceded on the trial that all of the trucks of the complainant are equipped with pneumatic tires.)

"5105-a42. The ton-miles of freight travel shall be computed as follows: The maximum capacity of each motor vehicle, including trailers, shall be added to the weight of the vehicle; this sum shall be multiplied by the number of miles the vehicle is operated, and the amount thus obtained divided by two thousand."

█ It is well settled that the state may constitutionally impose a tax burden on interstate commerce as compensation for the use of such highways, provided the charge is only a reasonable and fair contribution to the expense of construction and maintenance of such highways and of regulating the traffic thereon. Prouty v. Coyne (D. C.) 55 F.(2d) 289, 292, and cases there collected.

█ The act discussed in the case of Prouty v. Coyne was declared unconstitutional because the amount of the tax was based solely on the weight of the chassis regardless of the mileage traveled. Here the amount of the tax is based on the maximum capacity of the motor vehicle, its weight, and the number of miles the vehicle is operated. We are unable to agree with complainant that this method of computation of the tax is not predicated upon the use made or to be made of the highways of the state, which is all that is required. Interstate Transit, Inc., v. Lindsey, 283 U. S. 183, 51 S. Ct. 380, 75 L. Ed. 953. It may be, as suggested by complainant, that theoretically a tax based upon the amount or tonnage of the load and the distance hauled would be better theory; but we must keep in mind that the state is entitled to charge and public policy demands that in levying and collecting the taxes due regard must be had for its proper administration.

The Supreme Court in the Continental Baking Company Case, supra, discusses the provisions of the Kansas Motor Vehicle Act which are similar as to the method of computation of the tax, and says: "It is not shown that either regulations or license fees are unreasonable." And later in the same case, states: "This Court has frequently held that the mere selection of a mileage basis in the

regulation of railroads cannot be considered a violation of the Federal Constitution. The practical convenience of such a classification is not to be disregarded in the interest of a purely theoretical or scientific uniformity."

The other major contention of complainant is as to the requirement of the statute that public motor carriers of freight must furnish a bond to protect shippers. It may be conceded that the imposition of a requirement to furnish an indemnity bond as a condition precedent to a right to carry goods in interstate commerce would be an unreasonable burden upon a private carrier (Michigan Commission v. Duke, supra); however, a different situation and rules govern a public or common carrier. And the recent case of Continental Baking Co. v. Woodring, supra, holds such a provision not constitutionally objectionable as against the public or common carrier where no discrimination is made against the interstate carrier. In that case the Supreme Court said: "Requirements of this sort are clearly within the authority of the state which may demand compensation for the special facilities it has provided and regulate the use of its highways to promote the public safety. Reasonable regulations to that end are valid as to intrastate traffic, and, where there is no discrimination against the interstate commerce which may be affected, do not impose an unconstitutional burden upon that commerce. Motor vehicles may properly be treated as a special class, because their movement over the highways, as this Court has said, 'is attended by constant and serious dangers to the public, and is also abnormally destructive to the ways themselves.'"

We have carefully considered the many attacks upon the constitutionality of the Iowa Motor Carrier Law by complainant, and to us no reason appears why the law violates any of the provisions of the Federal Constitution.

There is a counterclaim filed by the defendants seeking to enjoin the complainant from further use of the highways of the state until he complies with the motor carrier law; but the counterclaim was not insisted upon by the defendants either in their oral or written arguments to the court. Defendants have a plain, speedy, and adequate remedy at law under the provisions of the act itself and are not entitled to such injunctive relief as against the complainant at this time. It follows that the complaint of William C. Grolbert should be and the same is hereby dismissed upon its merits, the restraining order vacated, and the counterclaim of the defendants is dismissed on the ground that the facts pleaded do not entitle the defendants to equitable relief. All parties except.