**CONSOLIDATED FREIGHT LINES, Inc., et al. v. PFOST, Commissioner of Law Enforcement of Idaho, et al.**

No. 1855.

District Court, D. Idaho, S. D.

July 27, 1934.

J. M. Hickson, of Portland, Or., and Hawley & Worthwine and Walter G. Bell, all of Boise, Idaho, for plaintiffs.

Bert H. Miller, Atty. Gen., and Ariel L. Crowley, Asst. Atty. Gen., for defendants.

Before GARRECHT, Circuit Judge, and WEBSTER and CAVANAH, District Judges, as a statutory three-judge court.

CAVANAH, District Judge.

The Consolidated Freight Lines for itself and all others similarly situate brought this suit against the Commissioner of Law Enforcement and the Attorney General of Ida-

ho to restrain the enforcement of the Uniform Motor Vehicle Registration Act of the state, which imposes a license fee and requires the registration of foreign and domestic motor vehicles operating upon the public highways within the state in the transportation of persons or property for compensation. The statute is assailed as being repugnant to the Commerce Clause of the Federal Constitution (article 1, § 8, cl. 3) when applied to the plaintiffs who are engaged in interstate transportation. They insist that the commerce clause imposes restrictions upon the taxing and licensing power of the state government as to one engaged in interstate commerce under the circumstances disclosed by the evidence.

At the outset the argument is pressed that the notice of hearing of the application for interlocutory injunction was never served upon the Governor or Attorney General of the state as required by the statute, title 28, section 380, USCA and, therefore, the court has not acquired jurisdiction to hear the case on its merits. The bill was filed on March 31, 1934, and thereafter on the same day application for an interlocutory injunction was filed. On June 12, 1934, notice of hearing and order to show cause on the application for an interlocutory injunction was signed by the District Judge, which notice, after stating the title of the court and cause, recites:

"To C. Ben Ross, Governor of the State of Idaho, and to Emmitt Pfost, Commissioner of Law Enforcement of the State of Idaho, and Bert H. Miller, Attorney General of the State of Idaho:

"The application of the plaintiffs, Consolidated Freight Lines, Inc., a corporation, Montana Consolidated Freight Lines, Inc., a corporation, and Ashbury Transportation Co. of Oregon, Inc., a corporation, for the issuance of an interlocutory injunction having been presented to me and the papers submitted in behalf of the application being filed herewith, it is

"Ordered, That the said application be heard before the court constituted in the manner prescribed by Section 380 of the United States Codes Annotated (formerly Section 266 of the Judicial Code, as amended), on the 15th day of June, 1934, at 10 o'clock, in the forenoon of that day at the courthouse in the United States Post Office Building in Boise City, Ada County, State of Idaho, and that the defendants, and each of them, at such time and place, show cause:

"I.

"Why an interlocutory injunction should not issue enjoining and restraining, pending the final order in this case and until the further order of this court, the defendants, Emmitt Pfost, Commissioner of Law Enforcement of the State of Idaho, and Bert H. Miller, Attorney General of the State of Idaho, and each of them, and their successors, agents, servants, employes, attorneys, and those in active concert or participating with them, and any and every person whomsoever acting, or attempting to act under and by virtue of that Act of the Legislature of the State of Idaho, being Chapter 126 of the laws of Idaho for 1933, amending Chapter 1, Idaho Code Annotated, 1932 Official Edition, amending the Uniform Motor Vehicle Registration Act, being an Act entitled 'An Act amending section 46-120 of the Idaho Code Annotated, relating to registration of motor vehicles of non-residents by providing for the registering, without purchase of license, of motor vehicles licensed by foreign states in cases where such motor vehicles are operated for profit within the state more than a period of 48 hours, and declaring an emergency'; and from in any way enforcing, or attempting to enforce the same, or collect licenses or registration fees thereunder against the plaintiffs under the terms of the said act.

"II.

"And for such other and further relief as to the Court shall seem equitable and proper in the premises.

"Charles C. Cavanah,
"United States District Judge."

Acknowledgment in writing of the service of the notice and order to show cause was made on the 9th day of June, 1934, by the Governor, Commissioner of Law Enforcement, and the Attorney General of the state.

The statute (28 USCA § 380) provides for the giving of at least five days' notice to the Governor, the Attorney General of the state and the defendants of the hearing for the interlocutory injunction. Its obvious purpose is to give notice to the Governor and Attorney General so that the state's interest may be protected, and when so informed as here, of such hearing at least five days before the day set, the requirements of the statute are satisfied. No particular form of notice is required. The Governor and Attorney General were, in express words, notified that application for an interlocu-

tory injunction would be made on June 15, 1934, at 10 o'clock a. m. in the United States courtroom in Boise City, Idaho, to enjoin the defendants from enforcing the same act of the Legislature involved. They acknowledge in writing service of a copy of the notice and order on June 9, 1934; being five days before the day set for the hearing. Clearly they received such notice as the statute contemplates. The case of Arneson v. Denny (D. C.) 25 F.(2d) 993, relied upon by the defendants, does not apply when we compare the notice given here with the record in that case as the notice claimed to have been given there did not inform the Governor and Attorney General of any particular law of the state sought to be enjoined, nor of the particular official acts sought to be enjoined, nor the time when the defendants to be served with copies of the court's order should appear, while the notice and order served here specifically states that the application of the plaintiffs for the issuance of an interlocutory injunction had been presented to the judge and a time and place for the hearing was set, and that the defendants should show cause why an interlocutory injunction should not issue enjoining them from acting under or enforcing the act involved and from collecting the licenses or registration fees thereunder.

We come then to the question of the power of the state to exact reasonable license fees and adopt regulations governing the use of the highways which has had a progressive application in the decisions of the Supreme Court. By Clark et al. v. Poor et al., 274 U. S. 554, 47 S. Ct. 702, 703, 71 L. Ed. 1199, the rule became definitely settled. The court, speaking through Mr. Justice Brandeis, observed, when considering the Ohio Motor Transportation Act (Gen. Code Ohio, §§ 614-84 to 614-102) which required a motor transportation company desiring to operate in the state to apply to the Public Utilities Commission for a certificate so to do and to pay a tax graduated according to the number and capacity of the vehicle used:

"The plaintiffs claim that, as applied to them, the act violates the commerce clause of the federal Constitution. They insist that, as they are engaged exclusively in interstate commerce, they are not subject to regulation by the state; that it is without power to require that before using its highways they apply for and obtain a certificate; and that it is also without power to impose, in addition to the annual license fee demanded of all persons using automobiles on the highways, a tax upon them, under section 614-94, for the maintenance and repair of the highways and for the administration and enforcement of the laws governing the use of the same. The contrary is settled. The highways are public property. Users of them, although engaged exclusively in interstate commerce, are subject to regulation by the state to ensure safety and convenience and the conservation of the highways. Morris v. Duby, 274 U. S. 135, 47 S. Ct. 548, 71 L. Ed. 966; Hess v. Pawloski, 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091. Users of them, although engaged exclusively in interstate commerce, may be required to contribute to their cost and upkeep. Common carriers for hire, who make the highways their place of business, may properly be charged an extra tax for such use. Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385; Kane v. New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222. Compare Packard v. Banton, 264 U. S. 140, 144, 44 S. Ct. 257, 68 L. Ed. 596.

"There is no suggestion that the tax discriminates against interstate commerce. Nor is it suggested that the tax is so large as to obstruct interstate commerce. It is said that all of the tax is not used for maintenance and repair of the highways; that some of it is used for defraying the expenses of the commission in the administration or enforcement of the act, and some for other purposes. This, if true, is immaterial. Since the tax is assessed for a proper purpose and is not objectionable in amount, the use to which the proceeds are put is not a matter which concerns the plaintiffs."

In Morris et al. v. Duby et al., 274 U. S. 135, 47 S. Ct. 548, 71 L. Ed. 966, somewhat of an analogous question arose in relation to the weight of vehicles using the highways, and the court was of the opinion that because an order of the highway commission fixing a maximum load of a vehicle to 16,500 pounds to prevent injury to the highway was not an undue burden placed upon interstate commerce.

The latest decision of the Supreme Court in Hicklin v. Coney, 290 U. S. 169, 54 S. Ct. 142, 144, 78 L. Ed. 247, carried forward the principle by applying it to the carrying capacity, size and weight of trucks. The court was of the opinion that: "Appellant insists that an undue burden is placed upon interstate commerce because the license fees are based on the 'carrying capacity' of the vehicles. The state court held that the fees 'are

collected, as provided for by section 8517, for the purpose of maintaining the public highways over which such motor vehicles shall operate, as compensation for their use.' The statute provides for the segregation, for this purpose, of the moneys collected. See Clark v. Poor, 274 U. S. 554, 555–557, 47 S. Ct. 702, 71 L. Ed. 1199. In this view the fees are not open to the objection raised in Interstate Transit, Inc., v. Lindsey, 283 U. S. 183, 186, 188, 51 S. Ct. 380, 75 L. Ed. 953. Carrying capacity, the size and weight of trucks, unquestionably have a direct relation to the wear and hazards of the highways. It is for this reason that the authority of the state to impose directly reasonable limitations on the weight and size of vehicles, although applicable to interstate carriers, has been sustained. Morris v. Duby, 274 U. S. 135, 143, 47 S. Ct. 548, 71 L. Ed. 966; Sproles v. Binford, 286 U. S. 374, 388, 389, 52 S. Ct. 581, 76 L. Ed. 1167. As the state may establish such regulations directly, the state may adjust its license fees, otherwise valid as being reasonable and exacted as compensation for the use of the highways, according to carrying capacity in furtherance of the same purpose. Clark v. Poor, supra." See Hendrick v. Maryland, 235 U. S. 610, 35 S. Ct. 140, 59 L. Ed. 385.

■ Users may be required to contribute to the cost and upkeep and are subject to regulations by the state to insure safety and conservation of the highways. Hess v. Pawloski, 274 U. S. 354, 47 S. Ct. 632, 71 L. Ed. 1091.

The provisions governing the imposition of the license fees and requiring registration of motor vehicles using the highways are found in the Uniform Motor Vehicle Registration Act, chapters 214, 126, 1933 Session Laws of Idaho, which provides by chapter 214, that all motor vehicles operating upon the highways for the carrying of persons or property pay a license fee according to weight and capacity of the vehicle, and those equipped with pneumatic tires, the fees shall be the weight of the chassis according to the manufacturer's rating plus 80 per cent. for each 100 pounds of the manufacturer's rated carrying capacity and 50 per cent. of the fee prescribed shall be added for trucks equipped with two or more solid tires, and the fees for trailers according to their weight. By chapter 126, nonresident owners of foreign vehicles operated within the state for the transportation of persons or property for compensation shall register such vehicle and trailer, and pay the same fees therefor as is required with reference to like owned by residents of the state.

■ Applying then the principle thus stated to the present act and evidence, two questions are presented: First, whether the business of operating motor vehicles in hauling freight for hire by plaintiff, the Consolidated Freight Lines, upon the highways of the state, is governed by the act; and, second, whether, if construed to be applicable, is it valid under the commerce clause of the Federal Constitution.

In this regard the evidence only relates to the nature and manner of conducting the business of the plaintiff, Consolidated Freight Lines, as no evidence was offered relating to the plaintiffs the Montana Consolidated Freight Lines and the Ashbury Transportation Company. Plaintiff, Consolidated Freight Lines, in the conduct of its business, operates motortrucks and trailers between points within Oregon and Idaho and occasionally in interstate in the state of Idaho in transporting freight for hire. The weight of the trucks it uses as rated by the manufacturer has a chassis weight of 8,000 pounds per truck and a carrying capacity of three and a half tons. The state has invested large sums of money in the cost of the construction and maintenance of the highways involved; the annual maintenance being approximately $300,000. The revenue obtained by the state under the Uniform Registration Act from registration and license fees goes into the state highway fund via the motor vehicle fund, and is used for highway purposes and for the state administration of the highways in various ways provided by sections 48-801, 48-802, 39-2111, 39-2112. It is well known, as found by the Supreme Court of the state when in considering as to where the funds paid under the act goes, that, "In the instant case the revenue goes to the state highway fund, via the motor vehicle fund as provided by chapter 165, 1929 Session Laws, page 298 (now sections 48-801 and 48-802, I. C. A.)." Garrett Transfer & Storage Company v. Emmitt Pfost, Commissioner of Law Enforcement (Idaho) 33 P.(2d) 743, 745.

The fees are predicated upon the use of the highways as to weight and carrying capacity of the motortruck. When the act and laws of the state relating to the construction and maintenance of highways are considered together, it is fair to say that the compensation imposed as registration and license fees is for the use of the highways.

and is devoted to highway purposes. The fact that section 48-128 I. C. A., provides that registration fees imposed upon motor vehicles shall be in lieu of all taxes thereon does not indicate that it was for other purposes than for the use of the highways as the Supreme Court of the state when construing a similar statute to the present gross revenue act of the state said that it was "a fair method of arriving at the proportion of the maintenance of the public highways used which should be borne by the licensee." Smallwood v. Jeter, 42 Idaho, 169, 244 P. 149, 155; Kane v. State of New Jersey, 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222. So it is clear that the act under the evidence should be so construed as to apply to and cover the business of the plaintiff.

This takes us then to the consideration of the question as to whether the act contravenes the commerce clause of the Federal Constitution. It is applicable alike to motor vehicles moving in interstate commerce as those of its own citizens. There is no discrimination as to the interstate and intrastate operations upon the highways or as to the fees to be paid. Before a state law or the officials of it should be enjoined in its enforcement, it should be persuasively shown that it is invalid. Admittedly the state may impose a tax or license fee upon a motor carrier for the use of its highways even though the carrier is engaged exclusively in interstate commerce, where the license or tax is levied for compensation for highway use and bears a reasonable relation to the privilege and is not discriminatory. Hicklin et al. v. Coney et al., supra; Clark v. Poor, supra; Interstate Busses Corp. v. Blodgett et al., 276 U. S. 245, 48 S. Ct. 230, 72 L. Ed. 551; Johnson Transfer & Freight Lines et al. v. Perry et al. (D. C.) 47 F.(2d) 900.

Plaintiffs' reliance is upon the decisions of the Supreme Court in the case of Prouty et al. v. Coyne (D. C.) 55 F.(2d) 289; Sprout v. City of South Bend, 277 U. S. 170, 48 S. Ct. 502, 72 L. Ed. 833, 62 A. L. R. 45; Interstate Transit Co. v. Lindsey, 283 U. S. 183, 51 S. Ct. 380, 382, 75 L. Ed. 953; Clark v. Poor, supra, and Grolbert v. Board of Railroad Commissioners (D. C.) 60 F.(2d) 321.

In Prouty et al. v. Coyne, supra, the court when holding that the act there was unconstitutional when applied to interstate commerce, and where the fees and compensation for the use of the highways was based upon the weight of the cars, referred to the decision of the Supreme Court in the Lindsey Case, and when in doing so it misconceived the act considered by the Supreme Court and its views in construing the same in that case for it appears clear from the opinion in the Lindsey Case that the court was construing a Tennessee act (Pub. Acts 1927, c. 89, § 4) which imposed upon concerns operating interstate motor busses on the highways, a tax of $500 a year for each vehicle seating more than 20 and less than 30 passengers, graduated according to carrying capacity. The scope of the act considered in the Lindsey Case imposed general property, inheritance, and merchants capital taxes, and by the section which was challenged, every vocation, occupation, and business named were declared to be a privilege, and the rate of tax on such privilege was fixed on 160 different businesses among which the motorbus business was included. The tax laid on the privilege of engaging in other lines of business was of the same character as the tax laid on interstate busses. It was graduated according to the assumed earning capacity, and the amount demanded increased with the population of the city or district in which the business was carried on. For some a different basis of gauging probable earning power was adopted. On the business of operating busses it varied according to seating capacity. The act was part of the general revenue act and dealt with practically all the taxes laid by the state, and the revenue derived from it went, not to the highway fund where it could be used in the construction and maintenance of the highways or the regulation of the motor vehicle traffic, but to the general fund of the state, and was nothing more than a privilege tax for the carrying on of interstate business. The tax was not predicated upon the use made or to be made of the highways. This is clearly pointed out by the court where it is said: "Nor is it related to the degree of wear and tear incident to the use of motor vehicles of different sizes and weights, except in so far as this is indirectly affected by carrying capacity. The tax is proportioned solely to the earning capacity of the vehicle."

The case is distinguishable from the present one for, as has been said, the present fees relate to the degree of wear, injury, and damage done to the highways incident to the use of the different weights and sizes of motor vehicles which is recognized to be the proper basis by the Supreme Court in

Hicklin v. Coney, supra, where the Lindsey Case was referred to and held not to apply to fees based upon the carrying capacity, size, and weight of trucks.

In Sprout v. City of South Bend, supra, an ordinance of the city was attacked on the ground that it violated the commerce clause as it only prescribed license fees varying with the seating capacity of the bus. That for a bus with seats for 12 persons, the fee was $50 a year. The interpretation of the ordinance was that it prescribed nothing more than a flat tax and was not designed as a measure of the cost for the use of the highways or incident to such a scheme of municipal regulation, or that the proceeds were applied to defray the expenses of such regulation, but the court did there recognize the power of the city to impose upon vehicles using the highways in interstate commerce, license fees and regulation of vehicles upon the theory that the fees are used in either the cost or maintenance of the highways.

And again in Grolbert v. Board of Railroad Commissioners of Iowa, supra, which would seem to be authority against the plaintiff's contention, the provision of the act assailed required the payment of a tax of 1 cent per ton mile of travel which was computed on the capacity of each vehicle. The conclusion there reached was that the method of computation of the tax was predicated upon the use made of the highways, which was all that is required. The damage done to highways by heavy motor freight transports is established by the evidence here, and is also recognized in the case of State v. Public Service Commission, 207 Wis. 664, 242 N. W. 668, 672, where it is said: "The damage done the highways by trucks hauling dead weight freight increases in proportion to the weight of the load."

The principle recognized by the Supreme Court in all of its decisions where the commerce clause is drawn in question, when applied to one engaged in interstate commerce and using the highways with motortrucks or busses in transportation of freight or persons, is that the tax or regulation is not a direct burden on interstate commerce where it appears that it is levied as compensation for the use of the highways or to defray the cost of construction and maintenance and expenses in regulating motor traffic.

It is difficult to perceive any other conclusion than that heavy weights of vehicles operating upon the highways, as disclosed by the evidence here, has the natural effect of causing wear and damage to the highways, and that when the fees charged under the present act and the laws of the state reach the state highway fund and are used in defraying its costs and upkeep, it is a fair method and not repugnant to the commerce clause, and, when applied to the plaintiffs under the evidence, they cannot be regarded as an unreasonable exercise of the legislative power.

The construction thus placed upon the act and the effect given to it as applied to plaintiffs under the facts, the application of the plaintiffs for an interlocutory injunction is denied, and, as the case has been finally submitted upon its merits for a final decree, a perpetual injunction is also denied, with defendants' costs.